# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| MARK ANTHONY ADELL,<br><br>       Plaintiff,<br><br>v.<br><br>RANDALL HEPP, CHRIS KRUEGER, BRUCE A. SIEDSCHLAG, CATHY JESS, MAGGIONCALDA, CAPTAIN CONGDON, MARK SCHOMISCH, OFFICER PULVER, HOLLY MEIER, C. WHITMAN, M. PATTEN, J. BOVEE, JAMES LABELLE, BRAD HOMPE, CHRIS O'DONNELL, LT. MESSER, SGT. WIERSMA, SGT. ST. LOUIS, LT. RHODES, GEORGE COOPER,<br><br>       Defendants. | Case No. 17-CV-267-JPS<br><br><br><br><br><br><br><br>**ORDER** |

  Plaintiff, who is incarcerated at the Wisconsin Secure Program Facility, filed a *pro se* complaint under 42 U.S.C. § 1983, alleging that his civil rights were violated. (Docket #1). This matter comes before the Court on Plaintiff's motion to proceed *in forma pauperis*. (Docket #2). The Court originally assessed Plaintiff an initial partial filing fee of 85 cents. (Docket #7); 28 U.S.C. § 1915(b)(4). However, Plaintiff filed a motion to waive payment of the initial partial filing fee, arguing that he has insufficient funds in his trust account and that prison officials will not allow him to overdraft the account or take a legal loan to pay the fee. (Docket #8).

Although the records initially presented to the Court suggested that Plaintiff had the ability to pay an initial partial filing fee, the Court credits his representations in his motion that, in reality, he cannot. The Court therefore finds that Plaintiff does not have the assets or means to pay the initial partial filing fee originally assessed. Because the Prison Litigation Reform Act mandates that a prisoner will not be prohibited from bringing a civil action for the reason that he lacks the assets and means to pay an initial partial filing fee, 28 U.S.C. § 1915(b)(4), Plaintiff will be granted a waiver of payment of the initial partial filing fee in this case. However, he is still obligated to pay the full filing fee pursuant to the statutory formula set forth in 28 U.S.C. § 1915(b)(2). *See id.* § 1915(b)(1).

Having determined that Plaintiff need not pay the initial partial filing fee, the Court next turns to screening his complaint. The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. *Id.* § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. *Id.* § 1915A(b).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992); *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Gladney v. Pendelton Corr. Facility*, 302 F.3d 773, 774 (7th Cir. 2002). The Court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327; *Gladney*, 302 F.3d at

774. "Malicious," although sometimes treated as a synonym for "frivolous," "is more usefully construed as intended to harass." *Lindell v. McCallum*, 352 F.3d 1107, 1109 (7th Cir. 2003) (citations omitted); *accord Paul v. Marberry*, 658 F.3d 702, 705 (7th Cir. 2011).

To state a cognizable claim under the federal notice pleading system, the plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). It is not necessary for the plaintiff to plead specific facts, and his statement need only "give the defendant fair notice of what the . . .claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *see Christopher v. Buss*, 384 F.3d 879, 881 (7th Cir. 2004). However, a complaint that offers "labels and conclusions" or "formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The complaint allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *Christopher*, 384 F.3d at 881.

In considering whether a complaint states a claim, courts should follow the principles set forth in *Twombly* by first "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. Legal conclusions must be supported by factual allegations. *Id.* If there are well-pleaded factual allegations, the Court

must then "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that: (1) he was deprived of a right secured by the Constitution or laws of the United States; and (2) the deprivation was visited upon him by a person or persons acting under color of state law. *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009); *see also Gomez v. Toledo*, 446 U.S. 635, 640 (1980). The Court is obliged to give the plaintiff's *pro se* allegations, "however inartfully pleaded," a liberal construction. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

Plaintiff alleges that the relevant events occurred while he was a incarcerated at Foxlake Correctional Institution ("FCI"), where he was housed from March 11, 2014, until January 24, 2017. (Docket #1 at 4). Plaintiff claims he has chronic ulcerative colitis as a complication of Crohn's disease. *Id.* at 3. According to Plaintiff, this condition means that he has to use the restroom often and that the need to do so arises urgently and without warning. *Id.* at 4. In his view, he needs constant access to toilet facilities on demand to avoid the possibility of incontinence. *Id.*

Plaintiff raises a litany of allegations against a large cast of defendants, each of whom is involved in one or more discrete episodes of alleged misconduct.[1] To provide context for its disposition below, the Court will

---

[1] In addition to the twenty-eight pages of allegations in the complaint itself, Plaintiff attached over 100 pages of exhibits to his complaint. *See* (Docket #1-1 and #1-2). The Court ignored these documents, as its review must be limited to the allegations falling within the four corners of the complaint itself. *Hill v. Trustees of Ind. Univ.*, 537 F.2d 248, 251 (7th Cir. 1976).

explain each episode briefly. First, Plaintiff claims that the warden and other high-level prison officials have created a policy of limiting toilet access to inmates during their one-hour recreation time. *Id.* at 5. No exceptions were made for any inmate. *See id.* at 5–6. Plaintiff has refrained from attending recreation because he believes he needs unfettered access to a bathroom at all times. *Id.*

Second, Plaintiff complains about policies applicable to daily prisoner head counts. *Id.* at 7. The head count takes 15–20 minutes at a minimum and inmates are not permitted to leave their cells until it is over. *Id.* Cells in the general population areas, where Plaintiff was housed, do not have toilets in them. *Id.* Plaintiff alleges that although prison officials warned that toilet use must be taken care of prior to a head count, he cannot do this; his condition strikes without warning and has nothing to do with how recently he has used the toilet. *Id.* As a result, Plaintiff claims he has had to sneak out of his cell during head count, against prison rules, to find a toilet. *Id.*

Next, Plaintiff complains of the unsafe condition of the prison water supply. *Id.* He alleges that the water was often brown, with a "putrid sulfuric odor to it." *Id.* To remedy this when it occurred, prison officials would allow inmates to run faucets indefinitely to clear out the contamination. *Id.* But this was not possible in FCI's restricted housing unit ("RHU"), where the plumbing system limits the flow of water to short bursts. *Id.* at 9. Plaintiff alleges that when he was housed in the RHU between December 12, 2016 and January 24, 2017, he lacked safe drinking water for taking his medications. *Id.* at 9–11. He claims that Defendants took no corrective action despite knowing the effect that the newly installed plumbing system would have on living

conditions inside the RHU and despite his repeated grievances submitted during this time frame regarding the water problem. *Id.*

Another issue Plaintiff had regarding the RHU was the doubling up of prisoners in the cells. *Id.* at 12. He complains that the RHU cells are designed for one and that being doubled up forced him to sleep on a mattress on the floor. *Id.* Additionally, he worried that doubling up prisoners in the RHU exposed one prisoner to punishment if his cellmate decided to act out. *Id.* Further, it appears Plaintiff sought a single cell for himself because of his need to frequently use the toilet. *Id.* at 13. Defendants nevertheless ignored his request not to be doubled up in the RHU. *Id.* at 12–13. Moreover, at or around this time, Defendants refused Plaintiff's request to be moved to another facility that he believed could better accommodate his bowel condition. *Id.* at 13.

Plaintiff's next complaint stems from the temperature of the prison. *Id.* at 13–14. Plaintiff claims his bowel condition is aggravated by cold temperatures and that, despite knowing this, prison officials allowed other inmates to keep the prison doors and windows open when they pleased, regardless of how cold it was outside. *Id.* Plaintiff believes that prison officials should have been more accommodating of his needs. *Id.* Further, Plaintiff states that after he complained about the situation, some prison officials vindictively kept windows open around him. *Id.* at 16.

The next area of concern for Plaintiff relates to trips to offsite medical provider appointments. *Id.* at 17–18. Plaintiff contends that on days when he had such appointments, he tried to avoid eating and to use the restroom as near as possible to the departure time so as to delay the onset of his

Page 6 of 12

Case 2:17-cv-00267-JPS   Filed 03/14/17   Page 6 of 12   Document 9

symptoms. *Id.* When he arrived at the hospital for the appointment, however, he was placed in a "bullpen" style of holding cell, designed to hold 20–25 inmates at a time. *Id.* Only one toilet was provided, and Plaintiff claims that it was not clean or sanitary. *Id.* He also alleges that he was shackled with "belly chains" for the entire duration of the trip, making it difficult to use the restroom when the need arose. *Id.* He asserts that no exception was made to this rule for him. *Id.* Plaintiff states that on one or more occasions, these circumstances resulted in him remaining shackled and practically unable to access a toilet for 9.5 hours. *Id.*

Further, in an unrelated vein, Plaintiff claims that in one instance of an offsite appointment, he was made uncomfortable when three correctional officers accompanied him into the exam room to discuss his bowel conditions with his doctor. *Id.* He terminated the appointment rather than discuss these sensitive issues in the officers' presence. *Id.*

Plaintiff's penultimate complaint grows from an injury to his left eye he sustained in an attack by another prisoner on August 8, 2016. *Id.* at 19. Plaintiff was scheduled to see an offsite specialist for care, but he refused to go because it meant going back to the hospital described above, which he felt presented intolerable conditions. *Id.* Plaintiff complained to prison officials that more needed to be done to accommodate his incontinence issues and still provide care for his injured eye, but his requests were denied. *Id.* at 20. As part of their investigation into this issue, several prison officials allegedly made false statements about accommodations they had tried to offer Plaintiff for his bowel problems, such as medications. *Id.* Their lies, according to

Plaintiff, were meant to derail Plaintiff's allegations. *Id.* As a result, Plaintiff's eye injury "persists with absolutely no treatment." *Id.*

Finally, on top of all of this alleged mistreatment, Plaintiff claims throughout his complaint that he filed grievances about each of the above episodes. He asserts that various inmate complaint examiners, reviewing authorities, and officials who reviewed his grievance appeals erroneously denied him relief, whether on the merits or because his grievances were untimely or not in the proper form. It does not appear that these officials totally ignored his grievances, only that Plaintiff disagrees with their decisions.

From these factual allegations, Plaintiff draws a large number of diverse legal claims. These include, most prominently: (1) deliberate indifference to his serious medical needs, in violation of the Eighth Amendment; (2) deprivation of his rights without due process of law, in violation of the Fourteenth Amendment; (3) denial of equal protection of the law, in violation of the Fourteenth Amendment; and (4) denial of reasonable accommodations for his bowel conditions, in violation of the Americans with Disabilities Act and/or the Rehabilitation Act.

Plaintiff's complaint as currently structured must be dismissed. Federal Rule of Civil Procedure 18 permits a plaintiff to bring in one lawsuit every claim he has against a single defendant. Fed. R. Civ. P. 18(a). However, to join multiple defendants in a single action, Rule 20 requires that the plaintiff assert at least one claim against all of them "arising out of the same transaction, occurrence, or series of transactions or occurrences" and that "any question of law or fact common to all defendants will arise in the

Page 8 of 12

Case 2:17-cv-00267-JPS   Filed 03/14/17   Page 8 of 12   Document 9

action." *Id.* 20(a)(2). Working together, these two rules mean that "[u]nrelated claims against different defendants belong in different suits" so as to prevent prisoners from dodging the fee payment or three strikes provisions in the Prison Litigation Reform Act. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). Consequently, "multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2." *George*, 507 F.3d at 607. Rule 20 applies as much to cases brought by prisoners as it does to any other case. *Id.*

The Court finds that Plaintiff's complaint violates Rules 18 and 20 insofar as it advances unrelated claims against multiple defendants for various discrete episodes occurring over a span of several years. While it is arguable that most of his claims stem from his bowel disease, his disease is not a "transaction" or "occurrence" under the Rules. As a result, there must be more tying each episode together, and those allegations are lacking here. For example, Defendant Captain Congdon appears involved in this case only in connection with the water and double-celling issues in the RHU. (Docket #1 at 10–12). There is no allegation tying him to any other episode of alleged misconduct. Similarly, there is no indication that the circumstances underlying the water problem, the cold temperature in the prison, and the conditions of the hospital's bullpen cell are in any way connected, other than that Plaintiff experienced these things.

Other examples abound, but these are sufficient to show that Plaintiff's complaint is of the kitchen-sink variety. Put differently, the complaint appears to represent Plaintiff's catalogue of everything that happened to him while incarcerated at FCI to which he takes exception. The *George* court

instructed that such "buckshot complaints" should be "rejected." *Id.* Therefore, the Court will strike the original complaint submitted on February 27, 2017. Plaintiff will be allowed to file an amended complaint in this case incorporating only properly related claims. Any unrelated claim not pursued in this case must be brought in a separate action.

The amended complaint supersedes the prior complaint and must be complete in itself without reference to the original complaint. *See Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1056-57 (7th Cir. 1998). In *Duda*, the Seventh Circuit emphasized that in such instances, the "prior pleading is in effect withdrawn as to all matters not restated in the amended pleading[.]" *Id.* at 1057 (citation omitted); *see also Pintado v. Miami-Dade Housing Agency*, 501 F.3d 1241, 1243 (11th Cir. 2007) ("As a general matter, '[a]n amended pleading supersedes the former pleading; the original pleading is abandoned by the amendment, and is no longer a part of the pleader's averments against his adversary.'") (quoting *Dresdner Bank AG, Dresdner Bank AG in Hamburg v. M/V OLYMPIA VOYAGER*, 463 F.3d 1210, 1215 (11th Cir. 2006)). If an amended complaint is received, it will be screened pursuant to 28 U.S.C. § 1915A.

Accordingly,

**IT IS ORDERED** that Plaintiff's motion for leave to proceed *in forma pauperis* (Docket #2) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiff's motion to waive the initial partial filing fee (Docket #8) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that the complaint submitted on February 27, 2017 (Docket #1) be and the same is hereby **STRICKEN**;

**IT IS FURTHER ORDERED** that Plaintiff is directed to file an amended complaint on or before **April 13, 2017**, which contains only related claims in accordance with this Order;

**IT IS FURTHER ORDERED** that if Plaintiff does not file an amended complaint by **April 13, 2017** that complies with the requirements of Rules 18 and 20, Federal Rules of Civil Procedure, this action will be dismissed for failure to prosecute;

**IT IS FURTHER ORDERED** that the Secretary of the Wisconsin Department of Corrections or his designee shall collect from Plaintiff's prisoner trust account the balance of the filing fee by collecting monthly payments from Plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action;

**IT IS FURTHER ORDERED** that a copy of this order be sent to the warden of the institution where the inmate is confined;

**IT IS FURTHER ORDERED** that, pursuant to the Prisoner E-Filing Program, Plaintiff shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. The Prisoner E-Filing Program is in effect at Dodge Correctional Institution, Green Bay Correctional Institution, Waupun Correctional Institution, and Wisconsin Secure Program Facility and, therefore, if Plaintiff is no longer incarcerated at any of these institutions, he will be required to submit all correspondence and legal material to:

Office of the Clerk
United States District Court
Eastern District of Wisconsin
362 United States Courthouse
517 E. Wisconsin Avenue
Milwaukee, Wisconsin 53202

Plaintiff is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute.

In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin, this 14th day of March, 2017.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge