# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

MARK ANTHONY ADELL,

                          Plaintiff,

v.

RANDALL HEPP, CHRIS KRUEGER, MAGGIONCALDA, CAPTAIN CONGDON, and MARK SCHOMISCH,

                          Defendants.

Case No. 17-CV-267-JPS

**ORDER**

        On March 14, 2017, the Court screened Plaintiff's original complaint. (Docket #9). The Court found that Plaintiff's complaint joined many unrelated claims against unrelated defendants, in violation of Federal Rules of Civil Procedure 18 and 20, as well as *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). *Id.* The Court struck the original complaint but permitted Plaintiff to file an amended complaint. *Id.* Plaintiff filed an amended complaint on March 22, 2017. (Docket #10).[1]

        As noted in the first screening order, the Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint, or portion thereof, if the prisoner has raised

---

[1] As he did with his original complaint, *see* (Docket #9 at 4 n.1), Plaintiff attached to his amended complaint many pages of exhibits. *See* (Docket #10-2). As before, the Court ignored these documents, since a complaint must be judge solely on the allegations within its four corners. *Hill v. Trustees of Ind. Univ.*, 537 F.2d 248, 251 (7th Cir. 1976).

claims that are "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. *Id.* § 1915A(b). All of the standards cited in the first screening order remain applicable here. (Docket #9 at 1–3).

In Plaintiff's original complaint, he described a series of unrelated episodes that occurred during his incarceration at Foxlake Correctional Institution ("FCI"), where he was housed from March 11, 2014 until January 24, 2017. (Docket #9 at 4). The Court found it to be a complaint of the "kitchen-sink variety" and directed Plaintiff to narrow his allegations to related claims and defendants. *Id.* at 9–10. In the amended complaint, Plaintiff largely accomplishes that goal by focusing his attention on one of the episodes described in his original complaint: the contaminated water in the restrictive housing unit ("RHU") at FCI. (Docket #10). Plaintiff names as defendants FCI's warden, Randall Hepp ("Hepp"), the deputy warden, Chris Krueger ("Krueger"), the security director, Mark Schomisch ("Schomisch"), the security supervisor, Captain Congdon ("Congdon"), and the building and grounds supervisor, Mr. Maggioncalda (whose first name is not provided). *Id.* at 2.

The predicate for Plaintiff's complaint is that he has chronic ulcerative colitis as a complication of Crohn's disease. *Id.* at 3. According to Plaintiff, this condition means that he has to use the restroom often and that the need to do so arises urgently and without warning. *Id.* at 4. Plaintiff contends that he needs constant access to toilet facilities on demand to avoid the possibility of incontinence. *Id.* He also has to take medications daily to treat the

condition, though these do not solve the problem of his urgent need to use the restroom. *Id.*

This condition caused Plaintiff special problems when dealing with the allegedly unsafe water supply at FCI. Plaintiff asserts that the water was often brown, with a "putrid sulfuric odor to it." *Id.* at 5. He further claims that Hepp, Schomisch, and Maggioncalda posted warnings in the prison indicating that inmates with auto-immune diseases like Plaintiff were at a higher risk of harm from the contaminated water than other inmates. *Id.* Plaintiff says that the warnings were not followed by corrective action as to the water contamination. *See id.* at 5–6.

As the Court explained in the prior screening order, prison officials would allow inmates to run faucets indefinitely to clear out the contamination. *Id.* But this was not possible in the RHU, where a newly installed plumbing system limited the flow of water to short bursts. *Id.* at 6. Plaintiff accuses each Defendant of playing a part in requesting that the RHU's new plumbing system be installed, though he does not explain what each Defendant's authority and involvement was in that decision. *See id.* He does allege, however, that each Defendant knew that this new system would prevent inmates in the RHU from flushing out water contamination. *Id.* at 7.

Plaintiff alleges that when he was housed in the RHU between December 12, 2016 and January 24, 2017, he lacked safe drinking water. *Id.* at 7–8. As noted above, Plaintiff needs to take medications daily for his bowel condition, as well as a "Gatorade drink mix" created with water provided in the cells, and he claims he was forced to take both using contaminated, unsafe water when housed in the RHU. *Id.* Further, Plaintiff states that he

needed constant access to clean drinking water to combat dehydration caused by his condition, something that was denied to him in the RHU. *Id.*

Plaintiff claims that none of the Defendants took corrective action after Plaintiff alerted them to the unsafe water condition and his particular need for a safe water supply in inmate grievances submitted between December 2016 and February 2017. *Id.* at 7. In one instance, Plaintiff submitted a complaint to Congdon about the water conditions and with a request that he be single-celled, apparently on the notion that having two inmates in one cell would strain the already meager water resources available. *Id.* at 7–9. Congdon never responded in writing. *Id.* at 8. Instead, when Plaintiff asked him about the complaint, Congdon claimed never to have received it and refused to acknowledge the existence of a problem with the water. *Id.* Plaintiff later received a conduct report for refusing to be double-celled with another inmate in the RHU. *Id.* at 9. As for Krueger, Plaintiff claims that he affirmed the dismissal of all of Plaintiff's inmate grievances in an attempt to actively hinder Plaintiff's ability to seek relief from the water problem. *Id.* Plaintiff contends that any of the Defendants could have assigned him to a single cell in the RHU or transferred him to another institution where his needs could have been better accommodated, but they all balked at these requests. *Id.*

Plaintiff alleges that Defendants' conduct displayed deliberate indifference to his serious medical needs, in violation of the Eighth Amendment, and constituted denial of reasonable accommodations for his bowel conditions, in violation of the Americans with Disabilities Act and/or the Rehabilitation Act. He also asserts that the denial of safe drinking water

constituted cruel and unusual punishment, in violation of the Eighth Amendment, and was a denial of equal protection of the law, in violation of the Fourteenth Amendment.

Plaintiff's claims related to the deprivation of clean water and deliberate indifference to his medical needs may proceed, but the other claims may not. First, Defendants, all individual employees of the Wisconsin Department of Corrections, are not amenable to suit under the Americans with Disabilities Act or the Rehabilitation Act. *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 670 (7th Cir. 2012); *Garcia v. S.U.N.Y. Health Sci. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001). Thus, these claims must be dismissed.

Second, Plaintiff's equal protection claim cannot proceed because the Supreme Court has not recognized individuals with bowel diseases, like Plaintiff, as constituting a suspect class under the Fourteenth Amendment. *See Mlaska v. Schicker*, Case No. 15-cv-00918-MJR, 2015 WL 6098733, at *11 (S.D. Ill. Oct. 16, 2015) (finding that group of inmates with a certain type of medical condition did not constitute a suspect class). Where a non-suspect class is implicated in such a claim, prison administrators are constitutionally entitled to treat prisoners differently "as long as the unequal treatment is rationally related to a legitimate penological interest." *Flynn v. Thatcher*, 819 F.3d 990, 991 (7th Cir. 2016). As Plaintiff concedes in his complaint, the low-flow water provision in the RHU is rationally related to the prison's interest in imposing discipline on those prisoners who engage in misconduct and are moved into restricted housing. (Docket #10 at 6). This is reason enough for the prison's decision to install this particular plumbing system, at least insofar as the Equal Protection Clause is concerned. *See Al-Alamin v. Gramley*,

926 F.3d 680, 686 (7th Cir. 1991) (noting that prisons have legitimate interests in security, crime deterrence, and prisoner rehabilitation).

The result is the same even when Plaintiff's allegations are construed as a "class of one" equal protection claim. A "class of one" claim arises when a plaintiff alleges that he has been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Plaintiff's allegations make clear that he was treated just like every other prisoner assigned to the RHU; indeed, the thrust of his complaint is that he should have received different treatment because of his medical needs. *See* (Docket #10 at 12). Thus, he was not intentionally treated differently from anyone else, and his equal protection claim must be dismissed.

Plaintiff has, however, stated a claim based upon inadequate conditions of confinement. Such a claim has two parts. *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008). First, the conditions must be "sufficiently serious" so that "'a prison official's act or omission results in the denial of the minimal civilized measure of life's necessities.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotations omitted)). If the prisoner passes that threshold, the court next examines whether prison officials acted with "deliberate indifference" to the alleged conditions. *Id.* "Deliberate indifference" means that the official knew that the inmate faced a substantial risk of serious harm in the alleged conditions and yet disregarded that risk by failing to take reasonable measures to address it. *Id.* Here, Plaintiff's claim meets the low bar required at the screening stage to show that he suffered sufficiently serious conditions while confined in the

RHU—that is, deprivation of clean drinking water, which affected his ability to treat his bowel conditions and stay hydrated—and that Defendants knew of the deprivation and ignored it. Of course, "failing to provide a maximally safe environment, one completely free from pollution or safety hazards," is not required by the Constitution. *Caroll v. DeTella*, 255 F.3d 470, 472 (7th Cir. 2001). But at this early stage, the Court finds is appropriate that Plaintiff's claim should proceed.[2]

For similar reasons, Plaintiff's claim for deliberate indifference to his serious medical needs may proceed past screening. To state a claim of deliberate indifference to a serious medical need, the plaintiff must show: (1) an objectively serious medical condition; (2) that the defendants knew of the condition and were deliberately indifferent in treating it; and (3) this indifference caused the plaintiff some injury. *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). The deliberate indifference inquiry here, like that

---

[2] As in his original complaint, Plaintiff tries to litigate unrelated issues, though this time the problem is not as egregious. Toward the end of the amended complaint, Plaintiff expands on his allegations about doubling up of prisoners in the RHU cells. (Docket #10 at 9–10). He complains that the RHU cells are designed for one and that being doubled up forced him to sleep on a mattress on the floor. *Id.* Additionally, he worried that doubling up prisoners in the RHU exposed one prisoner to punishment if his cellmate decided to act out. *Id.* To the extent Plaintiff alleges that he needed a single cell to accommodate his medical needs, that falls within the scope of the rest of his allegations. However, to the extent Plaintiff alleges that being doubled up in a cell exposes him to other dangers—like additional discipline or uncomfortable sleeping conditions—these have nothing to do with his medical needs or the water supply. They are a challenge to conditions of confinement in the RHU, but unlike the water problem, here Plaintiff makes no allegation that connects each of the Defendants to the double-celling policy. Consequently, the joinder of this claim violates *George*, 507 F.3d at 607, and so it will be dismissed without prejudice for him to pursue elsewhere if he chooses.

Page 7 of 10

Case 2:17-cv-00267-JPS    Filed 04/10/17    Page 7 of 10    Document 11

applicable to conditions of confinement, has two components. "The official must have subjective knowledge of the risk to the inmate's health, and the official also must disregard that risk." *Id.* Even if an official is aware of the risk to the inmate's health, "he is free from liability if he 'responded reasonably to the risk, even if the harm ultimately was not averted.'" *Id.* (quoting *Farmer*, 511 U.S. at 843). Negligence cannot support a claim of deliberate indifference, nor is medical malpractice a constitutional violation. *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976); *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011).

Construing Plaintiff's allegations liberally, the Court finds that Plaintiff can proceed on his claim that Defendants knew of his serious medical needs and engaged in several activities—including installing a particular plumbing system in the RHU and ignoring his requests for single-celling, transfer, or other accommodation—that showed deliberate indifference to those needs. Of course, Plaintiff faces an uphill battle on his claim, since he must show that Defendants each knew of his medical needs (an allegation the Court must assume as true at present), and that Defendants displayed objective deliberate indifference to those needs, which is hard to prove with respect to non-medical prison officials, who are typically entitled to rely on the care being provided by prison medical staff. *Greeno v. Daley*, 414 F.3d 645, 656 (7th Cir. 2005); *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004))

The Court also harbors concern that some of the defendants, such as Maggioncalda, are joined here only on the allegation that they violated a general duty to keep prison conditions safe for inmates. *See* (Docket #10 at 11). This is not the sort of personal involvement in a constitutional

deprivation which Section 1983 requires. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). Nor is negligence actionable under Section 1983. *Johnson v. Snyder*, 444 F.3d 579, 585 (7th Cir.2006). Yet, construing the allegations presented in Plaintiff's favor, he will be permitted to proceed at this time against all the Defendants.

For the reasons stated above, Plaintiff will be permitted to proceed against all the Defendants on the following claims: (1) deliberate indifference to his serious medical needs, in violation of the Eighth Amendment, arising from the RHU water supply; and (2) inadequate conditions of confinement—specifically, the denial of clean water in the RHU—in violation of the Eighth Amendment.

Accordingly,

**IT IS ORDERED** that Plaintiff's claims under the Americans with Disabilities Act, the Rehabilitation Act, and the Fourteenth Amendment Equal Protection Clause be and the same are hereby **DISMISSED**;

**IT IS FURTHER ORDERED** that pursuant to an informal service agreement between the Wisconsin Department of Justice and this Court, copies of Plaintiff's complaint and this order will be electronically sent to the Wisconsin Department of Justice for service on Defendants;

**IT IS FURTHER ORDERED** that, pursuant to the informal service agreement between the Wisconsin Department of Justice and this Court, Defendants shall file a responsive pleading to the complaint within sixty (60) days of receiving electronic notice of this order; and

**IT IS FURTHER ORDERED** that a copy of this order be sent to the warden of the institution where the inmate is confined.

Dated at Milwaukee, Wisconsin, this 10th day of April, 2017.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge

Page 10 of 10